Chief Judge Desmond.
This is a coram nobis case with a difference. Defendant has been denied relief although the fact on which he relies — that a police officer’s important testimony at defendant’s criminal trial was false — is now undisputed and has been decided in his favor after a coram nobis hearing. But a new trial was denied him on a finding by the County Judge that the false testimony given at the criminal trial was not perjurious (that is, mistaken but not intentionally false) and on further findings that the prosecutor was not aware of the falsity and that the untrue testimony was not material to the issue resolved at the criminal trial. Of course, these pronouncements of the coram nobis court were in a sense findings of fact. Essentially, however, they are policy determinations as to the reach of coram nobis, and they express a policy to which we cannot adhere. Defendant must be retried.
The background is in the record of defendant’s 1957 criminal trial which ended in his conviction of robbery first degree, grand larceny second degree and assault second degree and a 15- to 30-year prison term. The indictment was a consequence of a holdup robbery. The victim was unable to identify the defendant as one of the two men who had robbed him. The only testimony naming defendant as one of the two robbers was given by one Reaves who swore that he was the driver of the getaway car and that defendant and defendant’s brother were the two robbers. Reaves, of course, was an accomplice as matter of law and the Trial Judge so instructed the jury at the criminal trial. Corroboration of his story was, therefore, necessary. It was supplied by a District Attorney’s stenographer who put in evidence an unsigned question-and-answer statement by defendant, admitting his guilt.
The untrue testimony given against defendant at the criminal trial was rebuttal put in by City Detective James F. Casey who had been in charge of the questioning of defendant at a police station known as “ Brooklyn East Burglary Squad”. This officer’s testimony was of highest importance since, if true, it *358 destroyed defendant’s previously given testimony that during the questioning at “Brooklyn East Burglary Squad” he was plied with wine by police officers whom he did not know but not including Casey. Defendant had testified that an officer named Casey had questioned him for a short time when he first came to this police station but that thereafter three other detectives whose names he did not know took over the questioning. This questioning at the “ Burglary Squad ” took place between noon and 7:30 p.m. on Friday, November 30, 1956. Defendant, on the stand at the criminal trial, swore that he had been out drinking all the night before the morning on which he was taken to the police station. He swore that in the evening of that day he was taken to a different Brooklyn police station and was questioned, threatened and assaulted by various police officers until about 2 o’clock in the morning of December 1, 1956 when an Assistant District Attorney came to the station house and took from him the incriminating statement which was transcribed by the stenographer and read to the jury.
At the criminal trial the People rebutted defendant’s affirmations by producing seven New York City police officers each of whom testified that he had had something to do with defendant’s detention. Each said that there was no beating, no furnishing of wine and no coercion of any sort. Three only of these officers (Averill, Ringswald and Casey) were at “ Brooklyn East Burglary Squad ” and two of the three (Averill and Ringswald) stated that their contacts with defendant were brief and that they had not stayed with him during the whole of the seven-hour period of detention at that place. Detective Casey, however, swore that he was in charge of the questioning of defendant, that he was with defendant during practically the whole seven hours except that he was in and out of the room occasionally, and that no one gave defendant anything to drink. This assertion was, of course, a knockout blow to the defense since it came from the man who said he was in charge of the Brooklyn questioning and present there practically all the time during the questioning. It made defendant’s story about the wine appear completely false. On cross-examination at the criminal trial, Detective Casey was asked whether it was not true that he was absent from the police station for several hours that afternoon but he denied this and denied that he had left the building while *359 defendant was there. At the close of defendant’s trial on the indictment, the court informed the jury that there were sharp issues of fact as to the manner and incidents of appellant’s interrogation and that if the jury believed defendant’s story of intimidation and coercion they should acquit, charging the jury also that the burden of proof as to voluntariness of the confession was on the prosecutor. The jury’s verdict was “ guilty ”.
When the coram nobis petition came on for hearing, an Assistant District Attorney forthrightly stipulated that for a considerable part of the afternoon of November 30 Detective Casey had not been at the Brooklyn police station as he swore at the earlier trial but had actually been in the District Attorney’s office in connection with another investigation. Detective Casey took the stand, admitted that his trial testimony as to that afternoon was untrue but ascribed the untruth to confusion and failure to check the facts. The Assistant District Attorney who had tried the criminal cause testified that he had no knowledge at the time of the criminal trial that Detective Casey’s testimony was contrary to fact.
The finding that the officer’s rebuttal testimony was not material must be rejected. Without the confession the indictment would have had to be dismissed for lack of corroboration of the accomplice. As the jury were properly advised at the criminal trial, the confession was not to be received unless voluntary. On the issue of voluntariness defendant gave proof that he had been served intoxicating liquor by the police officers and this, if believed by the jury, could have been a basis for a finding that the confession was not voluntary. Then Detective Casey was put on the stand in rebuttal and destroyed the story. Casey’s story has now in turn been destroyed. The fact that the confession was given in the evening at a different place does not make immaterial the proof as to what happened during the afternoon.
Respondent says, correctly, that coram nobis relief will not be granted merely on a showing that false testimony was given for the prosecution, absent a showing that the prosecution knew of the falsity (People v. Fanning, 300 N. Y. 593). The rationale is that a post-trial demonstration of falsity of material testimony by a prosecution witness does not in itself impute fraud to the prosecution. But here the untrue story was given by the very *360 police officer in charge of the investigation and his wrongdoing must be charged to the prosecution. We are unimpressed by the argument that there can be no relief because the falsity was unintentional. The fault of the offender may be less but the effect is the same and the giving of carelessly false testimony is in its way as much of a £i fraud ’’ on the court as if it were deliberate (as to ££ negligent suppression ” of material evidence see United States v. Consolidated Laundries Corp., 291 F. 2d 563). Coram nobis proceedings have as their prime purpose the redress of such frauds.
The prayer of the petition should be granted and a new trial ordered.