**UNITED STATES of America ex rel.
Leo Di GIANGIEMO, Petitioner-
Appellant,**

v.

**Leon J. VINCENT, Superintendent Green
Haven Correctional Facility,
Respondent.**

**No. 204, Docket 73-2021.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1973.

Decided Jan. 9, 1974.

Theodore Ruthizer (James J. McDonough, Atty. in Charge, Legal Aid Society of Nassau County), Mineola, N. Y., for petitioner-appellant.

Burton Herman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y.), New York City, for respondent.

Before WATERMAN and FEINBERG, Circuit Judges, and GURFEIN,* District Judge.

GURFEIN, District Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York (Mishler, J.), dismissing a petition for a writ of habeas corpus. The District Court granted a certificate of probable cause.

On June 2, 1967, appellant Leo Di Giangiemo was sentenced by Judge Kelly in the Nassau County Court, as a second offender, to imprisonment for 10 to 20 years to be served concurrently, upon conviction by a jury of the crimes of burglary in the third degree and grand larceny in the first degree. The judgment was affirmed by the Appellate Division, Second Department, 34 A.D.2d 960, 312 N.Y.S.2d 381 (2d Dept. 1970), and by the New York Court of Appeals, 27 N.Y.2d 956, 318 N.Y.S.2d 325, 267 N.E.2d 109 (1970). Certiorari was denied, 401 U.S. 981, 91 S.Ct. 1216, 28 L. Ed.2d 333 (1971). An application for a writ of error *coram nobis* was denied, the order of denial being affirmed by the Appellate Division, 34 A.D.2d 1108, 313 N.Y.S.2d 972 (2d Dept. 1970), and the Court of Appeals affirmed, 28 N.Y. 2d 929, 323 N.Y.S.2d 175, 271 N.E.2d 704 (1971).

Thereafter, the application for the writ of habeas corpus was filed in the Eastern District. The petitioner contended that his conviction was unconstitutional because certain evidence was admitted at his Nassau County trial in violation of his rights under the Fourth and Fifth Amendments to the United States Constitution.

Appellant had been arrested on September 2, 1965 about a half hour after he had been dropped off at his home from an automobile operated by John Galante. After dropping appellant, Galante was arrested and his automobile searched. A gun and jewelry were found in an attache case in the car. A chisel and two screwdrivers were found in the trunk of the car. Appellant and Galante were indicted in Queens County for the crimes of receiving and withholding stolen jewelry and an automobile, and possessing a dangerous weapon. Appellant was also indicted in Nassau County with two others for burglary and grand larceny.

* Of the United States District Court for the Southern District of New York, sitting by designation.

In the Queens prosecution, counsel for appellant and Galante moved for suppression of the gun and jewelry, relevant to the Queens prosecution, on the ground that their Fourth Amendment rights had been violated by an alleged unlawful search and seizure. They apparently did not move to suppress the chisel and the two screwdrivers because they were not to be offered in evidence in the Queens prosecution.

A suppression hearing was held in the Queens County matter, and Mr. Justice Bosch of the Supreme Court, Queens County, on June 3, 1966, ordered the evidence suppressed and the indictment dismissed upon the ground that the warrantless arrest was not based on probable cause, and could not validate the illegal search. He ordered the pistol and the jewelry to be suppressed as evidence, and he also dismissed the indictment.

Although Mr. Justice Bosch held the search unlawful, he did not suppress the chisel and screwdrivers found in the car at the same time, because that relief was not asked. Appellant was not present at the suppression hearing.

Thereafter, represented by a different lawyer, appellant was tried, beginning February 27, 1967, on the Nassau County indictment. The chisel and the screwdrivers that had been taken from Galante's car were put in evidence. As Judge Mishler found, they were "important to the State's case against petitioner. The tools were alleged to have been used in prying open a stolen safe. There was no other physical evidence linking petitioner with the crime."

When the tools were offered in evidence, counsel for appellant objected, but not on Fourth Amendment grounds. The objection was overruled. No motion to suppress was made. It develops that the Nassau lawyer for the appellant had not been told that the other items involved in the same search and seizure had been suppressed.

Judge Mishler held a hearing to determine whether appellant had "understandingly and knowingly" waived his Fourth and Fifth Amendment rights by not objecting on those grounds to the admission of the tools at the Nassau trial. Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). After hearing testimony from appellant and the Queens lawyer for appellant, and by deposition from his Nassau lawyer, Judge Mishler made a specific finding "that petitioner did not knowingly waive his fourth and fifth amendment rights." He found that appellant was not informed about the suppression hearing in Queens until after the Nassau trial, and the Queens lawyer confirmed that he had not told the Nassau lawyer of his success at the suppression hearing in Queens. Nor did the District Attorney of Queens tell the District Attorney of Nassau.

Although police officers of Queens (New York City) and Nassau County jointly made the arrest of appellant, Detective Reilly of the N.Y. Police Department testified only regarding the jewelry and the gun at the Queens proceeding; and Detective Miraval, of the Nassau police force, testified in the Nassau trial only about the chisel and screwdrivers. No one mentioned the Queens suppression hearing or that items seized at the same time and place had been suppressed.

In his pro se petition on the *coram nobis* and in his brief in the Appellate Division, appellant argued primarily that the police officers had given inconsistent and perjurious testimony with the knowledge of the District Attorney. He relied on Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and cases involving the use of "false evidence." When counsel were appointed to act for him in the Court of Appeals, they rather stressed the argument that Justice Bosch's suppression order was a collateral estoppel to the introduction by the People in the Nassau case of the fruits of the same illegal search. They cited the scholarly opinion of Judge Sobel in People v. De Sisto, 27

Misc.2d 217, 214 N.Y.S.2d 858 (Co.Ct. Kings Co., 1961) in support of collateral estoppel. They also argued that even a negligent failure of the Nassau District Attorney to reveal the Queens suppression hearing, citing People v. Robertson, 12 N.Y.2d 355, 239 N.Y.S.2d 673, 190 N.E.2d 19 (1963), would require granting the writ of *coram nobis*.

The Nassau District Attorney argued: (1) that appellant had made no objection at the trial; (2) that Fourth Amendment issues may not be raised for the first time on the reargument of a State appeal by way of *coram nobis*; (3) that the Nassau District Attorney was neither a party to nor bound by the Queens County ruling, and that the Nassau judge would not be bound by the Queens County ruling; (4) that appellant had left the car before the search. Lastly, the District Attorney argued that the case against appellant rested primarily on eyewitness testimony.

Judge Breitel granted leave to appeal. The New York Court of Appeals affirmed without opinion (28 N.Y.2d 929, 323 N.Y.S.2d 175, 271 N.E.2d 704). We are now asked to decide as a matter of constitutional law that the granting of a motion to suppress evidence is a collateral estoppel to the introduction of the evidence in a subsequent trial. We are reluctant to undertake the determination of this question, because we feel that the matter has not been adequately presented to the State court.

Judge Mishler perceptively called attention to Section 813–c of the former N.Y. Code of Criminal Procedure in effect at the time of the Nassau trial. That section reads:

" § 813–c. *The motion in general*

A person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the property, papers or things, hereinafter referred to as property, claimed to have been unlawfully obtained may be used as evidence against him in a criminal proceeding, may move for the return of such property or for the suppression of its use as evidence. The court shall hear evidence upon any issue of fact necessary to determination of the motion.

If the motion is granted, the property shall be restored unless otherwise subject to lawful detention, and in any event it shall not be admissible in evidence in any criminal proceeding against the moving party.

If the motion is denied, the order denying such may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty."

We have examined the briefs submitted to the Court of Appeals and we find no mention of this statute. To be sure, the statute requires interpretation in two respects: (1) Does it bar the evidence in a subsequent trial on other charges in a different county; and (2) is it applicable to barring as evidence the chisel and tools when the order to suppress named only the jewelry and the gun, although all the items were seized under the same circumstances. We deem Section 813–c to be a State rule of evidence, which could be dispositive, in the absence of waiver, if it be given a certain interpretation.

We would not willingly venture into so delicate a question involving the administration of New York's criminal law unless compelled to do so. Cf. United States ex rel. Rogers v. LaVallee, 463 F. 2d 185, 187 (2 Cir. 1972). We think here that before we attempt to find whether constitutional questions exist in this area, we should allow our fellow judges in the State court to determine the meaning of the State statute first. Unless we treat exhaustion of State remedy in the most technical sense, we must consider that the question of appellant's rights under the statute has not been exhausted in the State courts. Cf. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438

(1971); United States ex rel. Nelson v. Zelker, 465 F.2d 1121 (2 Cir. 1972).[1]

Tempting though it may be to decide so interesting a question of collateral estoppel, we shall, therefore, not do so, even in the light of Judge Mishler's well-reasoned opinion.

We accordingly neither affirm nor reverse on the issue of collateral estoppel, but remand to the District Court with instructions to dismiss the petition and to remand to the State court for exhaustion of the State remedy. We think that another *coram nobis* proceeding is still available. Matter of Bojinoff v. People, 299 N.Y. 145, 151, 85 N.E.2d 909 (1949).

Remanded with directions.

---

1. In those cases it was the constitutional issue that had not been presented adequately. This court has also held, however, that a federal habeas corpus petition should be dismissed to permit state court construction of a criminal procedural statute, refraining in the meantime from deciding unresolved issues concerning the construction of the statute. United States ex rel. Herrington v. Mancusi, 415 F.2d 205, 209 (2 Cir. 1969).