**UNITED STATES of America ex rel. Leo Anthony DiGIANGIEMO, Petitioner-Appellant,**

v.

**Paul J. REGAN, Commissioner, New York State Division of Parole, Respondent-Appellee.**

No. 158, Docket 75–2094.

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1975.

Decided Dec. 29, 1975.

Theodore Ruthizer, Mineola, N. Y. (Matthew Muraskin, Mineola, N. Y., and Legal Aid Society of Nassau County, of counsel), for petitioner-appellant.

David L. Birch, New York City (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Burton Herman, Asst. Atty. Gen., of counsel), for respondent-appellee.

Before FRIENDLY, MANSFIELD and TIMBERS, Circuit Judges.

FRIENDLY, Circuit Judge:

This case has been here before, *United States ex rel. DiGiangiemo v. Vincent* 489 F.2d 1370 (2 Cir. 1974). Since it raises important questions of constitutional law which cannot be understood without detailed knowledge of the prior proceedings and since we cannot improve on Judge Gurfein's statement of what had transpired up to the time of his opinion, we reproduce the pertinent portions as Appendix A.

The panel which heard *DiGiangiemo I* conceived itself as being

"asked to decide as a matter of constitutional law that the granting of a motion to suppress evidence is a collateral estoppel to the introduction of the evidence in a subsequent trial,"

489 F.2d at 1373. It was "reluctant to undertake the determination of this question" because it felt that "the matter has not been adequately presented to the State court" and DiGiangiemo had an opportunity to bring a further state post-conviction proceeding under § 813–c of the former New York Code of Criminal Procedure. Accordingly the court determined that it would "neither affirm nor reverse on the issue of collateral estoppel" but would remand to the district court with instructions to dismiss the petition and to remand to the state courts for exhaustion of the state remedy.

DiGiangiemo's new application came on for hearing before Mr. Justice Wilkes in the Nassau County Court. His conclusion was as follows:

The Court concludes that the tools offered into evidence during the defendant's Nassau County trial were not inadmissible as a matter of law, but rather that they were vulnerable to possible suppression upon the ground that they were the fruit of an unlawful search and seizure, and that the remedy of collateral estoppel was available to the defendant with re-

spect thereto, approximately seven years ago at the time of his trial. However, the defendant—even then accomplished in the nuances of the law—and represented by extraordinarily able counsel, failed utterly to apply for such suppression and/or to invoke collateral estoppel. In view of the foregoing, this Court must conclude that the defendant has waived his rights thereto beyond so belated recall.

The Appellate Division for the Second Department affirmed per curiam, 47 A.D.2d 661, 364 N.Y.S.2d 37 (2d Dept. 1975), on the seemingly different ground that

> The burglar's tools were not the fruit of the same search and seizure previously held unlawful, and defendant's motion was, therefore, properly denied.

Chief Judge Breitel denied leave to appeal to the Court of Appeals.

DiGiangiemo then filed a second petition for federal habeas in the Eastern District of New York. Chief Judge Mishler denied this. He ruled that DiGiangiemo's collateral estoppel claim "does not reach constitutional dimensions" since it related to "a collateral proceeding" whereas *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), on which petitioner placed principal reliance, "speaks of a final adjudication." While he thought petitioner might well have had "a valid collateral estoppel claim which would have been recognized by the Nassau County Court had he raised it at trial," this "was not the type of collateral estoppel envisioned by *Ashe* which has constitutional protection." The judge issued a certificate of probable cause, and this appeal followed. We affirm, although on grounds different in some respects from those of the district court.

### I.

Although the Supreme Court had recognized in federal criminal prosecutions a claim of what was called res judicata, but which today would be described as collateral estoppel, beyond the bounds of the double jeopardy clause as early as *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), a claim that failure to apply collateral estoppel in favor of a defendant violated the due process clause did not come before it until *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958). The Court did not decide this point. Although expressing "grave doubts whether collateral estoppel can be regarded as a constitutional requirement," 356 U.S. at 471, 78 S.Ct. at 834, Mr. Justice Harlan, writing for the majority, found it unnecessary to determine the question since "New Jersey both recognized the rule of collateral estoppel and considered its applicability to the facts of this case." The Supreme Court of New Jersey had found the rule to be inapplicable because the previous trial "involved several questions, not just [petitioner's] identity, and there is no way of knowing upon which question the jury's verdict turned." The Supreme Court accepted the state court's application—more accurately non-application—of collateral estoppel, although intimating some doubt whether it would have approved a similar ruling by a lower federal court. There were separate dissents, one by Chief Justice Warren, another by Mr. Justice Douglas joined by Mr. Justice Black. Mr. Justice Brennan did not participate—for the rather apparent reason that, as a member of the Supreme Court of New Jersey, he had joined in the dissent from the judgment under review, *State v. Hoag*, 21 N.J. 496, 506, 122 A.2d 628, 634 (1956).

Dealing with facts about as close to *Hoag* as those in one criminal case can ever be to those in another, the Supreme Court, in *Ashe v. Swenson, supra*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 reached an opposite result. The Court did not hold *Hoag* to have been wrong in the constitutional setting in which that case had arisen; it held rather that the setting had changed as a result of *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which had ruled that the guarantee against double jeopardy in the Fifth Amendment had been made applicable to the states by the Fourteenth. Characterizing the is-

sue as being "whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again" on a charge of robbing a different victim at the same time and place, 397 U.S. at 446, 90 S.Ct. at 1195, the Court held that the double jeopardy clause required a negative answer.

█ We agree with the district judge that *Ashe v. Swenson* does not rule this case. We do not reach that conclusion because of the passage in the *Ashe* opinion which describes collateral estoppel as meaning "that when an issue of ultimate fact has once been determined by a valid and *final* judgment, that issue cannot again be litigated between the same parties in any future lawsuit," 397 U.S. at 443, 90 S.Ct. at 1194 (emphasis supplied), which the district judge evidently thought to exclude an order on a suppression motion. For purposes of issue preclusion, " 'final judgment' includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect," ALI, Restatement of Judgments 2d, Tent.Draft No. 1, § 41 (1973); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 87–90 (2 Cir. 1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2 Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Factors supporting a conclusion that a decision is final for this purpose are "that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal." Restatement, *supra*, § 41 at 7. All these exist with respect to the granting of the motion to suppress by the Queens County judge.[1] The reason why the holding in *Ashe v. Swenson*, as distinguished from some of its reasoning, is inapplicable to this case is rather the simple one that *Ashe* rested

on the double jeopardy clause and DiGiangiemo was never placed in jeopardy in Queens County, where the indictment was dismissed before the beginning of a trial. *Oppenheimer v. United States, supra*, 242 U.S. at 87, 37 S.Ct. 68; *Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). We are thus back to the question which the Court left unanswered in *Hoag*, namely, how far due process, unaided by the double jeopardy clause, requires a state to apply collateral estoppel in favor of a criminal defendant.

## II.

A hypothetical case may help in the consideration of this problem. Defendant X is the subject of two indictments in two counties, one for bank robbery, the other for having stolen an automobile to be used as the getaway car. He pleads not guilty to both charges and notifies the state that he proposes to prove an alibi, which will exonerate him of both offenses, and for which he has strong support. The state's reliance will be on weak identification evidence and a confession to both crimes. The bank robbery charge is to be tried first. X moves to suppress the confession on a number of grounds—use of physical violence; deprivation of food, water, and rest; promises of immunity, etc. Both sides recognize that determination of the motion will very likely decide the case. After a hearing of several days, a judge suppresses the confession. The state elects not to exercise a right to appeal, drops the bank robbery indictment, and indicates its intention to press the stolen car indictment. X moves again to suppress the confession. The state insists on a hearing, saying it has new evidence to rebut X's claims. Does due process permit it to be given one?

█ We think not. While it was unnecessary to determine in *United States v. Oppenheimer, supra*, whether application of collateral estoppel on behalf of a

---

1. Under § 518(6) of the former New York Code of Criminal Procedure, the People could
█

have appealed as of right to the Appellate Division from the suppression order.

criminal defendant was constitutionally required, overly sensitive ears are not needed to detect due process overtones in Mr. Justice Holmes' statement, 242 U.S. at 87, 37 S.Ct. at 69:

> It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.

We do not suggest that collateral estoppel is similarly mandated by due process in civil cases. But, as has been said, "[t]he weight of the harassment factor is considerably increased in the criminal law," Mayers and Yarbrough, *Bis Vexari*: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 32 (1960), because of the disparity usually prevailing in resources between the state and the defendant and the strain of a second prosecution even if not for the identical offense. If the hypothetical be altered so that the ruling on suppression of the confession had come in the course of a trial for bank robbery in which X was acquitted, *Ashe v. Swenson* seemingly would prevent relitigation of the admissibility of the confession in a subsequent trial for stealing the getaway car; it would appear bizarre that the more orderly procedure of trying the suppression issue before X was put in jeopardy should lead to a result less favorable to him. Assuming that the state has had an opportunity for a full hearing on suppression and at least one appeal as of right, we think due process would forbid relitigation of the issue determined adversely to it, although not, of course, the prosecution of X for auto theft on the basis of other evidence.

### III.

Unless Fourth Amendment cases are to be treated differently—a position which the Supreme Court has thus far declined to sanction in other contexts, *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), but see *Schneckloth v. Bustamonte*, 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (concurring opinion of Mr. Justice Powell joined by the Chief Justice and Mr. Justice Rehnquist), see also concurring opinion of Mr. Justice Blackmun, 412 U.S. at 249, 93 S.Ct. 2041, it would follow that if DiGiangiemo had moved the Nassau County Court to suppress the chisel and screwdriver found in the trunk of Galante's car, due process would have required that the motion be granted.[2] We cannot follow the per curiam ruling of the Appellate Division that "[t]he burglar's tools were not the fruit of the same search and seizure previously held unlawful"; the validity of the search turned on the existence of probable cause for Galante's arrest and the unfavorable decision on that issue in Queens County would have precluded relitigation in Nassau. We do note that it appears that the police officers have now changed their story. Sergeant Reilly testified at the Queens suppression hearing that, after he stopped the car for failing to obey a stop sign or, alternately because he (incorrectly) thought the car had been stolen, Galante had reached toward an unopened case in the back seat, which the judge found insufficient to constitute probable cause for arrest. By contrast, the affidavits of Sergeant Reilly and Detective Miraval opposing the first *coram nobis* proceeding relating to the Nassau County conviction said that Galante had come out of the car with a revolver in his hand—a scenario that might fit *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). But relitigating that point is just what issue preclusion prevents, see *Ashe v. Swenson, supra*, 397 U.S. at 447, 90 S.Ct.

---

2. Federal courts have already held that the doctrine of collateral estoppel operates to prevent relitigation, in federal prosecutions, of the validity of a search and seizure that has already been adjudicated to be violative of the Fourth Amendment, if the other prerequisites of the doctrine are met. *United States v. McKim*, 509 F.2d 769, 775–76 (5 Cir. 1975) (Wisdom, J.); *United States v. Carlisi*, 32 F.Supp. 479 (E.D.N.Y.1940); see also *Laughlin v. United States*, 120 U.S.App.D.C. 93, 344 F.2d 187 (1965) (collateral estoppel applied to introduction of tape recordings previously found to have been made in violation of statute.).

1189. DiGiangiemo's problem is that he never moved for suppression of the burglar's tools in Nassau County, an issue to which we now turn.

## IV.

As indicated, when the tools found in Galante's car were introduced in petitioner's Nassau County trial, no objection was made on the grounds either of the illegality of the search or of the prior adjudication of that illegality. In *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court held that

the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings,

372 U.S. at 438, 83 S.Ct. at 848, tempered only by the exception that

If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits,

372 U.S. at 439, 83 S.Ct. at 849.

*Kaufman v. United States, supra,* in addition to holding that there was no "greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants," 394 U.S. at 228, 89 S.Ct. at 1075, also made clear that these standards were to apply to Fourth Amendment claims raised in collateral proceedings. In both cases, however, the procedural default that was asserted to preclude collateral attack was a failure properly to raise the claim on appeal; the alleged constitutional infirmities had been seasonably presented at trial, see 372 U.S. at 394, 83 S.Ct. 822, 394 U.S. at 219–20 & n.3, 89 S.Ct. 1068. For present purposes, however, we will assume, although we need not decide, that if there has been exhaustion of a petitioner's potential Fourth Amendment claim in the state courts, and if there has been no "deliberate bypassing" of state procedure on this issue,[3] then a petitioner would be able to assert that claim in federal court, despite a complete failure to raise it in the initial state proceeding. Cf. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). We say "we need not decide," because petitioner's counsel has made it clear that a hearing on DiGiangiemo's Fourth Amendment claim is not the relief being sought.

It does not, we think, follow from the foregoing that petitioner is entitled to prevail on his due process-collateral estoppel claim. Not all claims—not even all constitutional claims—are alike; and the policies which argue for the availability of collateral relief, or for the application of a strict standard for finding a "waiver," in one case may not be present in another. Accordingly, we now turn our attention to those cases which have focused on the effect of a failure to raise a claim of double jeopardy or collateral estoppel at the trial level.

Prior to the advent of *Fay* and *Kaufman*, at least two federal courts had held that a claim of double jeopardy not raised at trial could not be asserted as the ground for release in habeas corpus. *Velazquez v. Sanford*, 150 F.2d 491, 493 (5 Cir. 1945); *Lotz v. Sacks*, 292 F.2d

---

**3.** Judge Mishler's original opinion of June 26, 1973, which was reaffirmed by the decision now under review, found that "petitioner did not knowingly waive his fourth and fifth amendment rights by failing to object on these grounds." However, the factual basis for that finding was the testimony which showed that neither petitioner nor his attorney knew of the results of the prior suppression hearing at the time of trial. This testimony clearly supports the trial court's finding as regards the Fifth Amendment claim; we need not decide if it is an adequate basis for finding that there was no waiver of a Fourth Amendment objection as well.

657, 659 (6 Cir. 1961). Unfortunately, we have been unable to locate any recent Court of Appeals decision that considers the issue we must decide, and the parties have not cited one to us.[4] The closest precedents are those which have considered the effect of the failure to raise a claim of double jeopardy or collateral estoppel in the district court upon the matters open to a Court of Appeals on direct review; and these decisions are not consistent.

In *United States v. Anderson*, 514 F.2d 583, 586 (7 Cir. 1975), the court refused to find a "waiver" that would prevent raising a double jeopardy claim for the first time on appeal, since it did not "find an 'intentional relinquishment' of a 'known right.'" To much the same effect, the court in *Government of Virgin Islands v. Smith*, 445 F.2d 1089, 1094 (3 Cir. 1971) noticed, *sua sponte*, a clearly meritorious double jeopardy claim even though counsel had not raised the point either at trial or on appeal. Other panels, however, have taken a different view. In *United States v. Conley*, 503 F.2d 520, 521 (8 Cir. 1974), the court refused to consider a defense of former

jeopardy raised for the first time on appeal; the theory of the case was that " 'constitutional immunity from double jeopardy is a personal right which if not affirmatively pleaded by the defendant at the time of trial will be regarded as waived.' " Other recent cases had adopted the same rule for the same reason: *United States v. Scott*, 150 U.S.App.D.C. 323, 464 F.2d 832, 833 (D.C. Cir. 1972); *United States v. Buonomo*, 441 F.2d 922, 924–25 (7 Cir.), *cert. denied*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971) (raising defense on motion for new trial not timely); see also *United States v. Young*, 503 F.2d 1072 (3 Cir. 1974) (recognizing claim raised on eleventh day of trial discretionary with district court). Our own circuit has apparently opted for the latter view, at least as regards collateral estoppel. *United States v. Friedland*, 391 F.2d 378, 381–82 (2 Cir. 1968).

Given this contrariety of views among the circuits, and in some cases between panels of the same circuit, and since our problem arises in the context of collateral attack rather than upon direct review, we think it necessary to consider the matter afresh.[5] In doing so, we do not

---

4. *McNeal v. Hollowell*, 481 F.2d 1145 (5 Cir. 1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974) raised on its facts—at least as they are stated by the dissenting judge—a situation close to, but not identical with, the one here presented. However, the majority opinion simply did not discuss the issue we are called upon to consider. The dissent of Judge Coleman, 481 F.2d at 1153, appeared to find continued vitality in the rule that a defense of double jeopardy not raised at trial is waived.

5. As far as we know, the Supreme Court has never ruled on this issue, either under the double jeopardy or due process clauses. The recent case of *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) held only that once a defendant has claimed former jeopardy, and the claim has been denied, a subsequent plea of guilty does not waive the claim.

In *Rollerson v. United States*, 132 U.S.App. D.C. 10, 405 F.2d 1078 (1968), a double jeopardy claim was held not to be cognizable for the first time in a proceeding under 28 U.S.C. § 2255, absent an explanation of why it was not raised earlier. On certiorari, 394 U.S. 575, 89 S.Ct. 1300, 22 L.Ed.2d 557 (1969), the Su-

preme Court vacated and remanded the case for "further consideration in light of *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227." On remand, the district court found that "there was never any intentional relinquishment or abandonment of a known right," and then proceeded to decide that on the merits the petitioner's claim lacked validity. *United States v. Rollerson*, 308 F.Supp. 1014 (D.D.C.1970). On appeal, 449 F.2d 1000 (1971), the court affirmed on the merits without further discussion of the procedural issue.

We do not consider this sequence to be in any way a determination by the Supreme Court as to the availability of § 2255 for double jeopardy claims not raised at trial. The remand was for "further consideration," which was clearly needed in light of the fact that the Court of Appeals' initial decision had relied on *Thornton v. United States*, 125 U.S.App.D.C. 114, 368 F.2d 822 (1966), a case specifically disapproved in *Kaufman*, 394 U.S. at 230, 89 S.Ct. 1068.

The statement in *Schneckloth v. Bustamonte*, 412 U.S. 218, 237–38, 93 S.Ct. 2041, 2053, 36 L.Ed.2d 854 (1973), that "the standard of a knowing and intelligent waiver has . . . been applied to . . . the

think it is useful to look at the problem as depending upon categorizing petitioner's claim as an "affirmative defense" or as one of determining whether there has been a "waiver." Both phrases, it seems to us, are labels for whatever conclusion is reached, rather than starting points for analysis.

Petitioner's claim is not based on the sets of policies underlying the Fourth Amendment or the exclusionary rule, both of which would be adequately served by holding the hearing which he has eschewed. The issue, rather, is the reach of the policies incorporated in the doctrine of collateral estoppel; see Mayers & Yarbrough, *supra* at 31–33; Note, 65 Yale L.J. 339, 339–41 (1956).

We see four such policies in the context of the criminal law. Foremost is the fear—surely a fear lurking in the facts of *Ashe v. Swenson, supra*—that relitigation may result in the incarceration of an innocent man. Aside from the fact that the legality of the search here at issue never impinged on the merits, we have here no prior verdict of acquittal that would make us doubtful about the ultimate finding of guilt in this case. A second purpose is the legitimate reliance a defendant may place on a prior adjudication, whether or not it was correctly decided; this policy seems to be at the core of *United States v. Oppenheimer, supra.* We fail to see, however, how a defendant who did not know of the prior finding and who did not assert it at the subsequent proceeding can be said to have been relying on that finding in any meaningful sense. The third purpose is the desire to avoid the waste of effort by all concerned—defendant, prosecution, witnesses, judge,

and jury—involved in relitigating a matter once determined; see *United States v. Buonomo, supra*, 441 F.2d at 924–25. While it would be unfair to count against the petitioner the fact that he did not avert this trial, it is equally clear that judicial economy will not be promoted by a rule allowing the claim to be made in the first instance on collateral attack.

The fourth policy, which we may denominate as the danger of prosecutorial harassment, *cf. Green v. United States, supra*, 355 U.S. at 187–88, 78 S.Ct. 221, and to which we have already referred, is the only one which even arguably supports petitioner's contention. But there is nothing to show that the Nassau County prosecutor was trying to get a conviction knowing that the introduction of evidence from the search had been adjudicated to be illegal in Queens, or that he would not have disclosed the prior adjudication to defense counsel had he known of it.[6] Petitioner's claim must thus be that, although purposeful harassment cannot be proven in this case, the danger of it in other cases is so great that we must fashion a prophylactic rule which would allow defendants to plead collateral estoppel whenever they became cognizant of the relevant facts, even if this is subsequent to trial and direct appeal. This argument, however, is based on a large set of assumptions: that a prosecutor would know of the prior adjudication but would not disclose it; that a defendant or his attorney would not know of the prior adjudication, or at least would not recognize its significance; and that a prosecutor would know that a defendant did not know, or or at least would be willing to spend his time on the gamble that such was the

right to be free from twice being placed in jeopardy," refers to a very different situation from the one here presented, as is shown by the Court's citation to *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The only "waiver" issue in *Green* was the Government's "paradoxical contention" that in appealing one of his convictions Green was "waiving" his double jeopardy defense to a more serious charge. 355 U.S. at 191–92, 78 S.Ct. 221. Green had without doubt pleaded

former jeopardy at the start of his second trial. 355 U.S. at 186, 78 S.Ct. 221.

**6.** The policy which sometimes demands the attribution of a particular prosecutor's knowledge (here that of the Queens prosecutor) to the government as a whole, *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), does not require such attribution in this case.

case. Such a situation may arise, but we think it would be sufficiently rare as not to warrant the imposition of a general rule that would release otherwise lawfully convicted prisoners.

Moreover, while it is true that a defendant would have to be foolish not to raise a known claim of former jeopardy that would be sufficient to secure dismissal of the entire proceeding, see *United States v. Anderson, supra,* 514 F.2d at 586, the same thing cannot be said about a failure to plead collateral estoppel when the only result would be the exclusion of certain items of evidence. If we were to adopt a rule that would give this defendant a new trial, we would also be opening the possibility that manipulative defense counsel might fail to move for the exclusion of evidence on the grounds of collateral estoppel, knowing that the claim could later be made, and thereby avoid alerting the prosecution to the need to develop other evidence while memories were still fresh. Of course, this possibility may be as speculative as that of a manipulative prosecutor discussed above; we mention it only to show that the compass does not clearly point in either direction.

■ As already said, we do not think it necessary here to formulate any general rule as to the conditions required for assertion of collateral estoppel as the basis for collateral attack. We hold only that in this case petitioner's constitutional rights have not been violated. Accordingly, the decision below is affirmed.

### APPENDIX A

Extract from opinion of Judge Gurfein

489 F.2d 1370 (2 Cir. 1974)

On June 2, 1967, appellant Leo DiGiangiemo was sentenced by Judge Kelly in the Nassau County Court, as a second offender, to imprisonment for 10 to 20 years to be served concurrently, upon conviction by a jury of the crimes of burglary in the third degree and grand larceny in the first degree. The judgment was affirmed by the Appellate Division, Second Department, 34 A.D.2d

960, 312 N.Y.S.2d 381 (2d Dept. 1970), and by the New York Court of Appeals, 27 N.Y.2d 956, 318 N.Y.S.2d 325, 267 N.E.2d 109 (1970). Certiorari was denied, 401 U.S. 981, 91 S.Ct. 1216, 28 L.Ed.2d 333 (1971). An application for a writ of error *coram nobis* was denied, the order of denial being affirmed by the Appellate Division, 34 A.D.2d 1108, 313 N.Y.S.2d 972 (2d Dept. 1970), and the Court of Appeals affirmed, 28 N.Y.2d 929, 323 N.Y.S.2d 175, 271 N.E.2d 704 (1971).

Thereafter, the application for the writ of habeas corpus was filed in the Eastern District. The petitioner contended that his conviction was unconstitutional because certain evidence was admitted at his Nassau County trial in violation of his rights under the Fourth and Fifth Amendments to the United States Constitution.

Appellant had been arrested on September 2, 1965 about a half hour after he had been dropped off at his home from an automobile operated by John Galante. After dropping appellant, Galante was arrested and his automobile searched. A gun and jewelry were found in an attache case in the car. A chisel and two screwdrivers were found in the trunk of the car. Appellant and Galante were indicted in Queens County for the crimes of receiving and withholding stolen jewelry and an automobile, and possessing a dangerous weapon. Appellant was also indicted in Nassau County with two others for burglary and grand larceny.

In the Queens prosecution, counsel for appellant and Galante moved for suppression of the gun and jewelry, relevant to the Queens prosecution, on the ground that their Fourth Amendment rights had been violated by an alleged unlawful search and seizure. They apparently did not move to suppress the chisel and the two screwdrivers because they were not to be offered in evidence in the Queens prosecution.

A suppression hearing was held in the Queens County matter, and Mr. Justice Bosch of the Supreme Court, Queens

County, on June 3, 1966, ordered the evidence suppressed and the indictment dismissed upon the ground that the warrantless arrest was not based on probable cause, and could not validate the illegal search. He ordered the pistol and the jewelry to be suppressed as evidence, and he also dismissed the indictment.

Although Mr. Justice Bosch held the search unlawful, he did not suppress the chisel and screwdrivers found in the car at the same time, because that relief was not asked. Appellant was not present at the suppression hearing.

Thereafter, represented by a different lawyer, appellant was tried, beginning February 27, 1967, on the Nassau County indictment. The chisel and the screwdrivers that had been taken from Galante's car were put in evidence. As Judge Mishler found, they were "important to the State's case against petitioner. The tools were alleged to have been used in prying open a stolen safe. There was no other physical evidence linking petitioner with the crime."

When the tools were offered in evidence, counsel for appellant objected, but not on Fourth Amendment grounds. The objection was overruled. No motion to suppress was made. It develops that the Nassau lawyer for the appellant had not been told that the other items involved in the same search and seizure had been suppressed.

Judge Mishler held a hearing to determine whether appellant had "understandingly and knowingly" waived his Fourth and Fifth Amendment rights by not objecting on those grounds to the admission of the tools at the Nassau trial. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). After hearing testimony from appellant and the Queens lawyer for appellant, and by deposition from his Nassau lawyer, Judge Mishler made a specific finding "that petitioner did not knowingly waive his fourth and fifth amendment rights." He found that appellant was not informed about the suppression hearing in Queens until after the Nassau trial, and the Queens lawyer confirmed that he had not told the Nassau lawyer of his success at the suppression hearing in Queens. Nor did the District Attorney of Queens tell the District Attorney of Nassau.

Although police officers of Queens (New York City) and Nassau County jointly made the arrest of appellant, Detective Reilly of the N. Y. Police Department testified only regarding the jewelry and the gun at the Queens proceeding; and Detective Miraval, of the Nassau police force, testified in the Nassau trial only about the chisel and screwdrivers. No one mentioned the Queens suppression hearing or that items seized at the same time and place had been suppressed.

In his pro se petition on the *coram nobis* and in his brief in the Appellate Division, appellant argued primarily that the police officers had given inconsistent and perjurious testimony with the knowledge of the District Attorney. He relied on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and cases involving the use of "false evidence." When counsel were appointed to act for him in the Court of Appeals, they rather stressed the argument that Justice Bosch's suppression order was a collateral estoppel to the introduction by the People in the Nassau case of the fruits of the same illegal search. They cited the scholarly opinion of Judge Sobel in *People v. De Sisto*, 27 Misc.2d 217, 214 N.Y.S.2d 858 (Co.Ct.Kings Co., 1961) in support of collateral estoppel. They also argued that even a negligent failure of the Nassau District Attorney to reveal the Queens suppression hearing, citing *People v. Robertson*, 12 N.Y.2d 355, 239 N.Y.S.2d 673, 190 N.E.2d 19 (1963), would require granting the writ of *coram nobis*.

The Nassau District Attorney argued: (1) that appellant had made no objection at the trial; (2) that Fourth Amendment issues may not be raised for the first time on the reargument of a State appeal by way of *coram nobis*; (3) that the Nassau District Attorney was nei-

ther a party to nor bound by the Queens County ruling, and that the Nassau judge would not be bound by the Queens County ruling; (4) that appellant had left the car before the search. Lastly, the District Attorney argued that the case against appellant rested primarily on eyewitness testimony.

Judge Breitel granted leave to appeal. The New York Court of Appeals affirmed without opinion (28 N.Y.2d 929, 323 N.Y.S.2d 175, 271 N.E.2d 704).