**UNITED STATES of America ex rel. Robert HUBBARD, Appellant,**

v.

**Robert S. HATRAK.**

**No. 78–1429.**

United States Court of Appeals, Third Circuit.

Argued Nov. 17, 1978.

Decided Dec. 6, 1978.

Douglas Riblet, Asst. Defender, E. D. Pa., Defender Association of Philadelphia, Federal Court Division, Philadelphia, Pa., for appellant.

John J. Degnan, Atty. Gen. of N. J., Trenton, N. J., Marc J. Friedman, Deputy Atty. Gen., Newark, N. J., Donald S. Coburn, Essex County Prosecutor, Kenneth Ply, Asst. Prosecutor, Ellen S. Weisburd, Law Clerk, Newark, N. J., for appellee.

Before GIBBONS and WEIS, Circuit Judges, and DUMBAULD,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Robert Hubbard appeals from the denial of his application for a writ of habeas corpus. He is in custody on a mandatory term of life imprisonment and a concurrent term of twelve to fifteen years for robbery.[1] These sentences were imposed following his conviction in a New Jersey state court for first degree felony murder, robbery, and robbery while armed. The charges against Hubbard resulted from an incident on May 27, 1971, when Hubbard and three other men entered an apartment at 482 South 19th Street, Newark, New Jersey, as part of an alleged robbery attempt. One of the four, James Rainey, possessed a pistol and, during an altercation, the pistol was discharged, killing Robert Howard, the occupant of the apartment. All four participants in the incident were charged in a single indictment with murder,[2] robbery,[3] and armed robbery.[4]

Because Rainey had given a statement to the police inculpating himself and the codefendants, the state successfully moved to sever Rainey's trial in order to use that statement against him while avoiding prejudice to the other defendants. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[5] In early November, 1971, Rainey was tried on the indictment.[6] He was found guilty of second degree murder.[7]

Thereafter, Hubbard was tried on the same indictment and convicted of felony murder, robbery and armed robbery. He presented to the New Jersey courts the contention that because Rainey was acquitted of felony murder, the Rainey jury must have found that no robbery took place during the May 27, 1971 affray. He urged that the federal constitution required the application of collateral estoppel to this finding, and therefore that the state should not have been permitted to prosecute him for robbery or for felony murder. The state courts

---

* Honorable Edward Dumbauld, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Hubbard was also sentenced to a term of two to three years for robbery while armed, which was to have been served concurrently with the life term but consecutively to the robbery term. The armed robbery conviction, however, was vacated by the New Jersey Superior Court, Appellate Division. *State v. Hubbard*, 123 N.J. Super. 345, 303 A.2d 87 (App.Div.1973).

2. *N.J.S.A.* 2A:113–1, 2 (1969).

3. *N.J.S.A.* 2A:141–1 (1969).

4. *N.J.S.A.* 2A:151–5 (1969).

5. Since Hubbard was not apprehended until October 27, 1971, he probably would not have been tried with Rainey in any event.

6. The other two participants, Robert Arrington and William Anderson, pleaded *non vult* and were sentenced to prison terms of eight to ten years.

7. *N.J.S.A.* 2A:113–2 provides:

   Murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy, or which is perpetrated in the course or for the purpose of resisting, avoiding or preventing a lawful arrest, or of effecting or assisting an escape or rescue from legal custody, or murder of a police or other law enforcement officer acting in the execution of his duty or of a person assisting any such officer so acting, is murder in the first degree. Any other kind of murder is murder in the second degree. A jury finding a person guilty of murder shall designate by their verdict whether it be murder in the first degree or in the second degree.

declined so to rule,[8] and a federal habeas corpus petition followed. The district court concluded that the Constitution does not require application of collateral estoppel in favor of one defendant because of the outcome in the trial of another defendant.[9] We affirm.

■ The New Jersey Supreme Court sensibly recognizes that there is some place in the criminal law for the doctrine of collateral estoppel. But unlike in civil cases, where that state has joined those enlightened jurisdictions that have abandoned the requirement of mutuality for the application of estoppel by judgment, *United Rental Equipment Co. v. Aetna Life & Cas. Ins. Co.*, 74 N.J. 92, 376 A.2d 1183 (1977), New Jersey has not entirely jettisoned in criminal cases the requirement of identity of parties. Notwithstanding Judge Conford's urging that the test of Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 4, 1977) be applied in criminal as well as civil cases, New Jersey has adhered to the view that in criminal cases collateral estoppel generally requires that the individual seeking its application have been a party to the first proceeding. *State v. Gonzalez*, 75 N.J. 181, 380 A.2d 1128 (1977). To that rule it has carved out a narrow exception for suppression motions. "Where a defendant makes a convincing showing that he [is] unable to participate at a prior suppression hearing in which the challenged search was invalidated, . . . and the evidence adduced at both hearings is substantially the same, he should be afforded the right to claim the benefits of such a hearing." *State v. Gonzalez, supra*, at 1136 (footnote omitted).

■ The New Jersey courts in Hubbard's case declined to make any further inroad

upon the requirement of identity of parties. Their determination of the estoppel effect of the judgment of Rainey's case is binding here, unless the federal Constitution requires a different result. 28 U.S.C. §§ 1738, 2241(c)(3). Hubbard suggests two constitutional provisions which may do so: the Double Jeopardy Clause of the fifth amendment and the Due Process Clause of the fourteenth.

■ In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court, noting that *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), had made the Double Jeopardy Clause applicable to the states, held that after a jury determined by its verdict that petitioner was not a robber the state could not try him again before another jury on that same issue. The Double Jeopardy Clause precluded such a result. In the instant case the Rainey jury may well have found that there was no robbery.[10] *Ashe v. Swenson* does not avail Hubbard, however, for it rested upon the Double Jeopardy Clause, and he was not put in jeopardy in Rainey's trial. If there is a constitutional requirement for the application of collateral estoppel in favor of a defendant not a party to the earlier trial, it must be found in the Due Process Clause.

Prior to *Benton v. Maryland, supra*, the Court in *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), held that a defendant who was tried and acquitted on three separate indictments for robbery of three persons on the same occasion could subsequently be tried and convicted of robbing a fourth person during the same occurrence without violating the Due Process Clause. Admittedly, Justice Harlan, who

---

**8.** *State v. Hubbard*, 123 N.J.Super. 345, 303 A.2d 87 (App.Div.), *cert. denied*, 63 N.J. 325, 307 A.2d 98 (1973).

**9.** Hubbard also alleged excessive sentence, prosecutorial misconduct, and erroneous instructions as grounds for habeas corpus relief. Of these, only excessive sentence is pressed on appeal. The district court rejected this contention, and we affirm. *See Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690

(1948); *Ormento v. United States*, 328 F.Supp. 246, 256–57 (S.D.N.Y.1971).

**10.** Of course, the jury might also have believed that, while a robbery *was* perpetrated, Rainey in particular was not guilty of committing it. The government does not, however, urge this position, and in view of our disposition of the legal issues presented we express no opinion on this possibility.

wrote the opinion of the Court in *Hoag v. New Jersey*, concurred in the majority in *Ashe v. Swenson*, 397 U.S. at 448, 90 S.Ct. at 1196. He noted, however, as did the majority, 397 U.S. at 442–43, 90 S.Ct. 1193, that the *Ashe v. Swenson* holding did not determine whether collateral estoppel was a due process requirement. To be sure, the result in *Ashe* cast some doubt upon the rule of *Hoag v. New Jersey* at least as to those cases in which the prior litigation, while not amounting to jeopardy, nevertheless decided an issue between the state and the same defendant.[11] Examples include pretrial suppression hearings and hearings on motions to dismiss indictments, both of which produce orders from which the state may appeal of right[12] but neither of which amount to jeopardy.[13] But, in terms, *Ashe* goes no further. It does not affirmatively adopt collateral estoppel as an incident to federal due process rights.

Of course, some contrary data can be found in the case law. In *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), Justice Holmes for a unanimous Court held that a pretrial dismissal of an indictment as time barred, although not within the Double Jeopardy Clause of the fifth amendment, was nonetheless *res judicata* in a subsequent prosecution for the same offense. The Holmes opinion is typically cryptic. It is not readily apparent that due process underlies the application of the bar doctrine in the case; indeed, the holding seems only to be a matter of federal common law. More recently, however, Judge Friendly found in *Oppenheimer* due process overtones. *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265–66 (2d Cir. 1975), *cert. denied*, 426 U.S. 950,

96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976). In *DiGiangiemo*, appellant sought to suppress certain evidence on the ground that its introduction was barred by a prior proceeding at which he had successfully moved to suppress other evidence obtained through the same illegal search. Although he rejected appellant's contention for other reasons, 528 F.2d at 1267–70, Judge Friendly suggested that due process provides at least some estoppel protection in criminal cases:

> Assuming that the state has had an opportunity for a full hearing on suppression and at least one appeal as of right, we think due process would forbid relitigation of the issue determined adversely to it, although not, of course, the prosecution . . . on the basis of other evidence.

*Id.* at 1266. He was careful to note that collateral estoppel is not mandated by due process in civil cases, *id.*; rather, he observed that the disparity of resources between the state and a criminal defendant and the strain of a second prosecution in which the same non-jeopardy issues would be relitigated—both of which render criminal prosecutions especially vexatious—made a strong case for the application of collateral estoppel against the state as a matter of due process.

There is much to be said, in the criminal law context, for associating the doctrine of collateral estoppel with the principles of due process. Plainly, the appearance of evenhandedness in the administration of justice weighs heavily among our jurisprudential concerns, and estoppel is directly addressed to that appearance. For that

---

11. The *Ashe* Court recognized the severe burdens on defendants who are reprosecuted under new charges made possible by "the extraordinary proliferation of overlapping and related statutory offenses . . . ." 397 U.S. at 445 n. 10, 90 S.Ct. at 1195. *See also Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam). The unfairness to a single defendant is hardly less severe when the State makes him " 'run the gauntlet' a second time," *id.* at 446, 90 S.Ct. at 1195, in a non-jeopardy context. We note that perhaps mindful of such unfairness the *Ashe* Court,

while not adopting a due process justification for criminal collateral estoppel, did not foreclose one either. *Id.* at 442–43, 90 S.Ct. 1193.

12. *See Rules Governing the Courts of the State of New Jersey* 2:5–6(a) (1978); 18 U.S.C. § 3731 (1969).

13. As the Supreme Court concluded in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), jeopardy attaches in both federal and state jury trials at the point when the jury is empaneled and sworn.

reason thoughtful observers probably will applaud the introduction of non-mutual collateral estoppel into New Jersey criminal law. *See State v. Gonzalez, supra.* But there are countervailing considerations as well, to some of which Justice Pashman refers in his opinion for the Court in *Gonzalez.* One consideration is the adverse effect on law enforcement when the state is deprived of the use of evidence which might produce a different outcome in the later proceeding. Moreover, the goal of judicial efficiency—one underpinning for the doctrine of collateral estoppel—may actually be subverted if the government must appeal every adverse pretrial ruling or else risk preclusion in a subsequent case. Still another consideration, not mentioned by Justice Pashman but particularly applicable to the extension of collateral estoppel to non-parties, is the potentially inhibiting effect such a rule might have upon the grant of severance motions. In this case, for example, New Jersey may not have been so solicitous of Hubbard's *Bruton* rights if it knew that all matters decided adversely to it in Rainey's trial would inure to appellant's benefit. It would be unfortunate if, in the pursuit of fairness in one aspect of the criminal justice process, we were to cause untoward consequences in another. Thus, whatever may be said in favor of the application of collateral estoppel when the defendant is a party to the judgment, the case for such application in favor of non-parties is a good deal less compelling.

Hubbard also relies upon *United States v. Bruno*, 333 F.Supp. 570 (E.D.Pa.1971). In that case, two of four defendants to a federal conspiracy indictment were severed for trial. A key issue at their trial was the authenticity of a questioned document. After hearing the testimony of the witnesses on both sides, the trial court granted a motion for judgment of acquittal because the government had failed to produce sufficient evidence of forgery to permit the case

to go to the jury. Thereafter, the remaining defendants moved to dismiss the conspiracy indictment, and this motion was granted on collateral estoppel grounds. Judge Masterson reasoned that the government, having had one full and fair opportunity to litigate the authenticity of the questioned document, should not be granted another. In so ruling, he relied on *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), *Bruszewski v. United States*, 181 F.2d 419 (3d Cir. 1950), and *Bernhard v. Bank of America Nat'l Trust & Savings Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942). These well-known cases hold that mutuality of estoppel is not a due process requirement, and that the interest of a judicial system in avoiding relitigation is a sufficient reason for applying the doctrine of collateral estoppel in favor of a non-party. They do not, however, suggest that non-party collateral estoppel is constitutionally required. The *Bruno* case thus announces no more than a non-constitutional federal rule as to the preclusive effect of a judgment of acquittal in a criminal case. *Bruno* was not reviewed by this court, and there is no occasion for us to discuss its authority in a federal context. It suffices to observe that since it did not rest on due process grounds, it cannot help Hubbard.

Appellant proposes two additional sources of authority for his due process contention: those cases holding that when two persons are charged with conspiracy, the acquittal of one requires an acquittal of the other,[14] and those cases holding that the acquittal of a principal requires the acquittal of one charged with aiding and abetting.[15] But the cases to which Hubbard refers do no more than interpret specific federal statutes. They do not address the question whether such interpretations are constitutionally compelled. Any suggestion that they are so compelled is dispelled by the settled rule that inconsistent verdicts in

---

14. E. g., *Romontio v. United States*, 400 F.2d 618 (10th Cir. 1968), *cert. dismissed*, 402 U.S. 903, 91 S.Ct. 1384, 28 L.Ed.2d 644 (1971); *United States v. Fox*, 130 F.2d 56 (3d Cir.), *cert.*

denied, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535 (1942).

15. E. g., *United States v. Prince*, 430 F.2d 1324 (4th Cir. 1970) (per curiam).

criminal cases are permissible. *E. g., Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Vastine*, 363 F.2d 853, 855 (3d Cir. 1966).

Without suggesting either approval or disapproval of Judge Friendly's suggestion in *DiGiangiemo* that due process requires the recognition of collateral estoppel against the state in a subsequent criminal case where the defendant was a party to the first case, we hold that where he was *not* a party to the first case the Due Process Clause imposes no collateral estoppel requirement. The judgment preclusion effect of the earlier judgment is determined solely by the law of the forum, state or federal, which rendered it. Thus, the writ of habeas corpus was properly denied.