**UNITED STATES of America,
Appellant/Cross–Appellee,**

v.

**Jerry Lee HARVEY,
Appellee/Cross–Appellant.**

**Nos. 89–1124, 89–1125.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1989.

Decided April 10, 1990.

---

Michael K. Fagan, St. Louis, Mo., for appellant/cross-appellee.

James D. McMaster, Coral Gables, Fla., for appellee/cross-appellant.

Before ARNOLD and BEAM, Circuit Judges, and HENLEY, Senior Circuit Judge.

ARNOLD, Circuit Judge.

Jerry Lee Harvey was convicted of one count of conspiracy to impede the Internal Revenue Service's collection of income taxes. Harvey received a five-year prison sentence and a $10,000 fine, the maximum penalty for violation of 18 U.S.C. § 371. The United States sought a lengthier sentence under the dangerous-special-offender (DSO) sentencing provisions, 18 U.S.C. § 3575, but the District Court dismissed the government's DSO notice, and the government appeals. Harvey has filed a cross-appeal alleging numerous errors in his trial, primarily the government's improper use of information obtained under a grant of immunity in connection with a 1980 agreement not to prosecute Harvey for a drug offense. We find no errors warranting a new trial; however, the District Court did commit reversible error during the sentencing phase when it dismissed, without an evidentiary hearing, the government's Notice of Intent to Proceed Under the Dangerous Special Offender Statute. We remand for an evidentiary hearing to determine whether Harvey is a dangerous special offender in accordance with 18 U.S.C. § 3575.

## I.

In December 1986 a federal grand jury indictment charged Harvey and Dennis Patrick McCartan[1] with conspiring to defraud the United States through a tax-evasion scheme involving the purchase of a Lear jet. Harvey's first conviction was reversed on account of improperly admitted evidence, and a new trial was ordered. *United States v. Harvey*, 845 F.2d 760 (8th Cir.1988). We now review a second conviction, obtained at the new trial on remand.

The government presented evidence that beginning in 1982 McCartan arranged several purchases of jet aircraft for Harvey. At Harvey's request, McCartan sought to include large amounts of cash in some of these purchases. One request to purchase an aircraft from the Vollrath Company for "125 thousand dollars in under-the-table money" became known to the FBI. Further negotiations between Vollrath, McCartan, and Harvey were taped. Ultimately, a price of $140,000 was agreed upon, to include $60,000 in "unreportable" currency. The sale was consummated through an FBI undercover agent in January 1983. Ten months later, in November 1983, Harvey asked McCartan to confirm the documented price with the seller—previously Harvey had suggested $80,000 or $85,000, "just in case somebody ever checks." Harvey reported a purchase price of $80,000 on his corporation's income-tax return, leaving an outlay of $60,000 unaccounted for. In recorded phone conversations in 1985, Harvey confirmed that he and McCartan had coordinated the $80,000 figure in reporting to the IRS.

In both trials Harvey claimed that the tax-conspiracy charge, the grand-jury proceedings, and certain evidence admitted against him violated a 1980 agreement with federal authorities in Mobile, Alabama. That agreement allegedly gave him "complete immunity" for all past misdeeds, including the use of off-shore accounts for proceeds from drug dealing. The District Court overruled Harvey's objections. It reasoned that any immunity granted in 1980 would be irrelevant to a conspiracy that began in 1982. The Court reviewed transcripts of the grand jury proceedings and found that no immunized information was presented to the grand jury.

Following the jury verdict in the first trial, the District Court unsealed the government's Notice of Intent to Proceed Under the Dangerous Special Offender

---

1. McCartan later reached an agreement with the government and testified in these criminal pro-

ceedings against Harvey.

Statute. 18 U.S.C. § 3575 provided[2] for an enhanced sentence of up to 25 years in certain circumstances. Section 3575(e)(2) defines a "special offender" as one who committed the felony for which he is sentenced "as part of a pattern of conduct which was criminal under applicable laws of any jurisdiction, which constituted a substantial source of his income, and in which he manifested special skill or expertise...." Criminal conduct forms a "pattern" if it "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."

The District Court granted Harvey's motion to dismiss the Notice on the ground that on its face it failed to establish a "pattern of conduct" as required by 18 U.S.C. § 3575(e)(2). The government was not allowed to present evidence in support of the statute's applicability, because the Court found the Notice insufficient as a matter of law. The Court ruled that allegations in the Notice that Harvey had previously engaged in drug trafficking and violent behavior were "quite different" from impeding the collection of taxes, and thus were more like "isolated events," specifically excluded by the statute from forming a pattern of conduct. During Harvey's appeal of his first conviction, the government cross-appealed the dismissal of the Notice, but a panel of this Court reversed Harvey's conviction without reaching this issue. *Harvey*, 845 F.2d at 763. Following the second trial, the government renewed its request for a hearing in order to demonstrate the requisite pattern of conduct. This request was summarily denied. No specific ruling was made with respect to

Harvey's claim that the Notice was based upon immunized information.

## II.

We first address the government's claim that it should be allowed to present evidence that Harvey is a dangerous special offender. The dangerous-special-offender sentencing provisions require that the government file with the trial court a notice that it seeks application of the statute. The notice must "set[ ] out with particularity the reasons why [the prosecutor] believes the defendant to be a dangerous special offender." 18 U.S.C. § 3575(a). The notice requirement is a procedural protection for the defendant. See *United States v. Kelly*, 384 F.Supp. 1394, 1400 (W.D.Mo.1974), *affirmed*, 519 F.2d 251 (8th Cir.1975).

In its Memorandum and Order entered at the conclusion of the first trial, the District Court held that the Notice was sufficiently particular and not merely conclusory: "[T]he government listed numerous criminal activities defendant had allegedly engaged in including assisting in and threatening violence toward others, long-term large-scale drug trafficking, [and] violation of probation and parole.... Although the notice lacks specific dates, locations, and names of victims, in light of the pretrial detention hearings at which specific details were brought out, the Court finds that the notice in this case does satisfy the requirements of particularity contemplated by the statute."[3]

▇▇▇ The Court nevertheless dismissed the Notice because it did not allege a sufficient "pattern of conduct." The Court held that "pattern of conduct" requires a com-

---

2. The statute has been repealed, but proceedings under it are saved by 1 U.S.C. § 109.

3. The notice alleges that Harvey possesses (a) unusual knowledge, judgment or ability in the buying, brokering and/or selling of aircraft and/or of real estate, in the use of corporations to mask personal financial dealings and holdings, in tax evasion and commission of Internal Revenue Code violations, in money laundering, in illegal drug trafficking, in furthering fraudulent schemes by the use of

mail and/or wire communication facilities, in witness intimidation and murder, and in defrauding governmental agencies; and (b) facilitating the initiation, organizing, planning, financing, directing, management, supervision, execution or concealment of such criminal conduct, the enlistment of accomplices in such conduct, the escape from detection or apprehension for such conduct, or the disposition of the fruits and proceeds of such conduct.

mon element—something more specific than the purpose of "amassing wealth" suggested by the government during the argument on Harvey's motion to strike the Notice. The government claims it did not assert that amassing wealth was the *only* purpose connecting the charged conspiracy with the conduct alleged in the Notice; furthermore, the Notice need only allege that a pattern exists, not actually establish proof of that pattern. The government claims it should get an opportunity to show that these seemingly unrelated acts are in fact related.

We agree. The statute says that criminal conduct forms a pattern "if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). If, for example, the government can show that a substantial amount of the cash involved in the instant tax offense came from prior drug dealings, the conspiracy involving the Lear jet would not be an isolated event, and a sufficient pattern would be established. (The Notice can be read to allege that Harvey wanted to conceal income from the I.R.S. because that income was the fruit of previous crimes.) The government should be allowed an opportunity to show some interrelation between the criminal acts alleged in the Notice and the tax-conspiracy charge. We therefore remand for an evidentiary hearing to determine if enhancement of Harvey's sentence according to 18 U.S.C. § 3575 is appropriate.

■ We note that on remand the government may not introduce evidence obtained in violation of an immunity agreement with Harvey. The government neither wrote down the terms of the agreement at issue, nor recorded the information Harvey allegedly provided. However, a district court in Florida has found that Harvey was given both use and transactional immunity in an informal agreement with the government in 1980. *United States v. Harvey*, 651 F.Supp. 894 (S.D.Fla.1986). This finding was not challenged by the government on appeal. A panel of the Eleventh Circuit affirmed. *United States v. Harvey*, 848 F.2d 1547 (1988). Upon rehearing *en banc*, the Eleventh Circuit reversed in part the District Court, but the finding of immunity was upheld: "Harvey received transactional and use immunity for any testimony as to which he could have invoked his fifth amendment privilege in September of 1980." *United States v. Harvey*, 869 F.2d 1439, 1446 (1989) (*en banc*). Accordingly, collateral estoppel applies—the government may not relitigate the existence of this agreement in any other proceeding against Harvey.

Harvey's immunity is not a formal grant of immunity, see 18 U.S.C. § 6001 *et seq.*, and so the limits of this immunity are not defined by statute. Rather, it is in the nature of a contract, the terms of which govern the extent of immunity appropriate here. The 11th Circuit confirmed Harvey's claim that he received "complete immunity."[4] We take this to mean, as did the Eleventh Circuit, that the government offered Harvey "complete immunity" in the generally understood, formal use of the term: Harvey received both transactional and use immunity.

As developed in the context of formal grants of immunity, transactional immunity accords full protection from prosecution for the offense to which the immunized testimony relates. Use immunity is more limited: it prohibits the use, in a criminal prosecution, of any evidence derived directly or indirectly from the information provided to the government. The burden is on the government to demonstrate a source independent of the immunized testimony. The required showing is stringent. See, *e.g.*, *United States v. Poindexter*, 727 F.Supp. 1488 (D.D.C.1989).

■ Only use immunity is at issue here. Transactional immunity prohibits prosecu-

---

**4.** Harvey testified that the government "agreed nothing I ever give [sic] them would be used against me, nor would any U.S. Attorney's Office seek to prosecute me for anything; that I was just getting a clean walk, and I should stay on the Government's side and help them." Quoted in *United States v. Harvey*, 869 F.2d at 1453 (dissenting opinion).

tion of immunized acts—the hearing under the dangerous special offender provision is to determine sentence. Harvey's use immunity, however, may prevent the government from introducing evidence at the sentencing hearing of certain acts alleged in the Notice. If Harvey claims that an offer of evidence relating to a pre–1980 act violates his use immunity, then the government may introduce that evidence to enhance his sentence only if it proves that it was "derived from a legitimate source wholly independent" of the testimony given under the grant of immunity. *Harvey*, 869 F.2d at 1444–45. See *Kastigar v. United States*, 406 U.S. 441, 461–62, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972).

■ We reject Harvey's several alternative arguments supporting the trial court's dismissal of the government's Notice. 18 U.S.C. § 3575(a) requires that the government not disclose to the trial court, prior to conviction, that it is seeking an enhanced sentence.[5] According to Harvey, the Notice should be dismissed because the same judge presided at both of his trials, and therefore knew of the government's intent to seek an enhanced sentence at his second trial. The non-disclosure provision does not mean, however, that a judge cannot anticipate a filing, or be aware that a notice was filed at a trial subsequently reversed on appeal. *United States v. White*, 748 F.2d 257 (5th Cir.1984). The trial judge below dismissed the government's Notice after Harvey's first conviction. The government did not refile its Notice during the second trial; it merely renewed its request for reconsideration *after* Harvey's second conviction. Harvey has thus shown no prejudice from this procedure. An appropriate remedy might have been a motion to disqualify the trial judge from presiding at the second trial, see *United States v. Ouimette*, 614 F.Supp. 107 (D.R.I.1985), but Harvey did not raise this objection below and therefore cannot raise it now.

■ Equally meritless are Harvey's claims that the Notice is insufficiently particular, and that the dangerous-special-offender statute is unconstitutional because its terms are vague. The District Court's rulings on these objections were not erroneous. Harvey also claims that the statute allows use of hearsay evidence and fails to protect his rights under the Confrontation Clause. These arguments are premature. They can be raised and decided, if necessary, during the evidentiary hearing on remand.

### III.

Harvey's cross-appeal alleges that several errors occurred during the conviction phase of his second trial, requiring reversal and a new trial. These errors include violations of the immunity agreement, improper introduction of "other crimes" evidence, and withholding of exculpatory evidence by the government.

Harvey contends that his "complete immunity" agreement was violated numerous times by the prosecutor's references to "offshore cash." According to Harvey, these references insinuated that the aircraft transaction was but a small part of an ongoing attempt to launder drug profits which the government had discovered in the Cayman Islands. Harvey claims the government did not discover the existence of these funds; rather, his own immunized testimony in 1980 was the source of the government's information.

■ We follow the reasoning of the Eleventh Circuit *en banc* opinion to hold that any transactional immunity Harvey received in 1980 is irrelevant to a prosecution for a tax conspiracy that began in 1982. *Harvey*, 869 F.2d at 1445–48. Nor was there a violation of Harvey's use immunity by references to "offshore cash" in the prosecutor's closing statements. Though the District Court made no explicit finding on the point, the government showed sources independent of any infor-

---

**5.** 18 U.S.C. § 3575(a) provides:
In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, be disclosed to the jury, or be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties.

mation Harvey may have revealed to drug agents in 1980. Two witnesses, McCartan and Irene Hudak, who prepared Harvey's income-tax forms in 1983, testified that Harvey told them of an account he held in the Cayman Islands.

Harvey also claims that the prosecutor was improperly exposed to immunized information, and that evidence of pre–1980 drug dealing was presented to the grand jury in violation of his immunity agreement. The District Court considered Harvey's proffered evidence and reviewed the grand-jury testimony *in camera.* We cannot say that the District Court's findings were clearly erroneous. Harvey asserts another immunity violation occurred at his pretrial-detention hearing, at which he was required to prove that the government had violated the immunity agreement—an improper burden of proof. We do not consider this claim because, even if correct, it would not require reversal of his conviction.

■ Harvey further contends that the District Court erroneously allowed evidence of highly prejudicial "bad acts" to be presented to the jury, in violation of Fed.R. Evid. 403 and 404. This Court reversed Harvey's first conviction on account of references to Harvey's alleged drug dealing. *Harvey,* 845 F.2d 760. During the second trial, the District Court was particularly solicitous of Harvey's objections on this ground. The government was allowed to present evidence of offshore funds, minor discrepancies in other tax statements, numerous and large cash transactions, and Harvey's use of nominee corporations and two social-security numbers. We hold that this evidence was not unduly prejudicial, and is relevant to the crime charged—a tax-evasion conspiracy. Nothing explicit was said to connect this evidence with drug dealings.

■ Harvey's last assertion of error involves an alleged violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Harvey claims the government did not disclose certain wiretap pleadings, tapes, and transcripts that "may contain" exculpatory conversations with Vollrath officials. The government turned over two of six boxes belonging to a Florida state prosecutor for review by the District Court. The government presented evidence that the other four boxes were never sent to it by state authorities in Florida, and that Harvey was advised of the location of those boxes. The District Court's findings are not clearly erroneous, and we agree that these facts are insufficient to constitute a *Brady* violation.

In conclusion, Harvey is not entitled to a new trial. However, because the District Court erroneously dismissed the government's Notice of Intent to Proceed Under the Dangerous Special Offender Statute, we reverse and remand for a hearing to determine whether enhancement of Harvey's sentence under 18 U.S.C. § 3575 is appropriate.

It is so ordered.