In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3223

JOSE J. LOERA, JR.,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:10-cv-00453-PPS—**Philip P. Simon**, *Chief Judge*.

ARGUED JANUARY 15, 2013—DECIDED MAY 7, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*.  The petitioner, Jose Loera, asks us to set aside his conviction on the ground that his trial lawyer had been ineffective. See 28 U.S.C. § 2255. Loera had been indicted back in 2005 on drug charges. In response to a motion to suppress, the judge had forbidden the government to offer evidence of what the petitioner had told DEA agents after he allegedly asked for a lawyer. After repeated continuances the judge dis-

missed the indictment (though without prejudice), on the ground that the delay resulting from the continuances had violated the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq*. Loera was reindicted and again sought to suppress his statements to the agents. But this time the judge—the same judge—denied the motion on the ground that actually Loera had not told the DEA agents he wanted a lawyer. So the statements were admitted into evidence. The jury convicted Loera and the judge sentenced him to 240 months in prison. We affirmed the conviction and sentence. 565 F.3d 406 (7th Cir. 2009).

Loera faults his lawyer first for having failed to argue to the district judge that the denial of the motion to suppress in the first round of the criminal proceeding should be binding in the second round—the trial—by virtue of the doctrine of collateral estoppel; and second for having failed to argue in that first round that the delay in the proceeding had violated not only the Speedy Trial Act but also the speedy trial clause of the Sixth Amendment; if so, the dismissal of that proceeding should have been with prejudice, *Strunk v. United States*, 412 U.S. 434, 439-40 (1973); 3B Charles Alan Wright & Peter J. Henning, *Federal Practice & Procedure* § 803, p. 358 (4th ed. 2013), in which event Loera could not be tried subsequently for the same offense.

Loera had been a passenger in a car that police officers stopped because of traffic violations. The driver consented to a search of the car and the police searched and found cocaine in a hidden compartment. Arrested, and questioned by DEA agents in an interview

room at the county jail, Loera told them he knew nothing about the cocaine; he had simply been asked to deliver the car to someone. He also said that he'd been visiting family in Atlanta and that the driver of the car had driven down and picked him up there. When the agents told him he would remain in jail and would probably be charged with cocaine trafficking in violation of federal law, he said, according to one of the agents, that he wanted "to help himself out if he can" by making a controlled delivery of the car to assist the agents in apprehending the intended recipient of the drugs. The agent added: "he just continued to ask what can I do to help myself out of the situation."

Loera was indicted. His lawyer moved to suppress the statements that he had made to the agents. They had read him his *Miranda* rights and he had refused to sign a waiver of them. The motion alleged that he had asked for a lawyer but that the agents had not stopped questioning him. When the government told the judge, in response to the motion to suppress, that it "was not concerned with the statements," the judge without further ado suppressed "any statements [Loera] made after his request for counsel." But he did not suppress all of Loera's post-arrest statements, as the motion had requested. Nor did he rule that Loera had actually asked for a lawyer—in light of the government's lack of interest in the statements he had no need to decide whether Loera had a legal right to their suppression. It's like when a party moves in limine to exclude some piece of evidence and the other party replies that it

has no objection and so the judge grants the motion without bothering to resolve the factual disputes that would have arisen had the party that offered the evidence objected.

Months passed without the case going to trial, owing to repeated requests for continuances—which the judge granted—made by the government, by Loera's lawyer, and by the lawyer for Loera's co-defendant. In November 2006—19 months after the indictment had been issued—Loera moved to dismiss it on the ground of excessive delay, citing constitutional and statutory grounds for dismissal. But in support of the motion his lawyer argued only the statutory ground.

The following month the judge granted the motion and dismissed the indictment without prejudice, a permissible sanction for violation of the Speedy Trial Act. 18 U.S.C. § 3162(a)(2); *Zedner v. United States*, 547 U.S. 489, 499 (2006); *United States v. Sykes*, 614 F.3d 303, 309-10 (7th Cir. 2010). Two months later Loera was reindicted. The case went to trial two months after that.

In the resumed proceeding the lawyer again filed a motion to suppress all the statements his client had made to the DEA agents after his arrest. The judge conducted an evidentiary hearing. A DEA agent who had questioned Loera testified that Loera had not asked for a lawyer or sought to stop the questioning. Loera testified to the contrary. The judge decided that the agent was telling the truth and so ruled that Loera had never asked for a lawyer and so the statements should not be suppressed. The judge thus ruled on the

merits of the motion; for Loera's lawyer had failed to argue that the motion to suppress should be granted regardless of its merit, by force of the doctrine of collateral estoppel.

It is doubtful that the refusal to suppress the post-arrest statements to the DEA agents, if it was an error, was a harmful one. On the one hand the other evidence of Loera's guilt was powerful. The jury heard testimony from the informant who had linked Loera to the drug ring and had told the agents where and when he would be traveling. And during the traffic stop Loera and the driver had made inconsistent statements about the purpose of their trip and Loera had been unable to tell the police where his relatives in Atlanta lived, even approximately and even though he said he'd been staying with them. And on the other hand the statements he made to the DEA agents, rather than amounting to a confession, were consistent with his position at trial; for he had denied to the agents knowing there was cocaine in the car. It's true that his offer to "help himself out" by making a controlled delivery of the cocaine suggested, at the least, a suspicious familiarity with the drug scene. But since he didn't testify at the trial, his denial to the DEA agents that he'd known there was cocaine in the car at least got before the jury a denial of guilt by the defendant. And even if he was mixed up in some way in the illegal drug scene, that didn't mean he was involved in drug dealing when the car in which he was a passenger was pulled over.

But we needn't rely on the doctrine of harmless error in concluding that the admission of the statements is not a basis for reversing Loera's conviction.

The doctrine of collateral estoppel, an offshoot of res judicata, teaches that a judge's ruling on an issue of law or fact in one proceeding binds in a subsequent proceeding the party against whom the judge had ruled, provided that the ruling could have been (or was, but unsuccessfully) challenged on appeal, or if not that at least it was solid, reliable, and final rather than "intended to be tentative." *Lummus Co. v. Commonwealth Oil Refinery Co.*, 297 F.2d 80, 89 (2d Cir. 1961). And provided also that the ruling was necessary to the validity of the final judgment in the case, as otherwise there would be little incentive to challenge it on appeal, and that it had been made only after the party later complaining about it had had an opportunity for a full and fair hearing (not necessarily oral, however). *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 628-29 (7th Cir. 2010); *Harris Trust & Savings Bank v. Ellis*, 810 F.2d 700, 705 (7th Cir. 1987); *Restatement (Second) of Judgments* § 27 (1982).

The government rightly acknowledges the doctrine's applicability to criminal cases. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916); *United States v. Salerno*, 108 F.3d 730, 741 (7th Cir. 1997); *United States v. Harvey*, 900 F.2d 1253, 1257 (8th Cir. 1990). So applied, it operates much like the rule against double jeopardy—and indeed has been held to be a component of the constitutional protection

against double jeopardy. *Dowling v. United States*, 493 U.S. 342, 347 (1990); *Ashe v. Swenson, supra*, 397 U.S. at 445-46**.** But it is also a common law principle: "res judicata [including collateral estoppel] is very much a common law subject." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4403, p. 35 (2d ed. 2002) (footnote omitted). Criminal law is suffused with such principles. Think of attempt, conspiracy, aiding and abetting, malice aforethought, recklessness, entrapment, self-defense, and duress—all being common law principles (often renamed) adapted to fleshing out terse criminal statutes. Cf. *Dixon v. United States*, 548 U.S. 1, 13-14 (2006); *Morissette v. United States*, 342 U.S. 246, 250-52 (1952). And so collateral estoppel is applicable in a criminal proceeding without reference to the double jeopardy clause, though of course in a federal prosecution the applicable version of collateral estoppel is the federal. See *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001); Note, "The Due Process Roots of Criminal Collateral Estoppel," 109 *Harv. L. Rev.* 1729, 1742 (1996).

The significance for this case of the distinction between common law collateral estoppel and collateral estoppel as a component of the double jeopardy clause is that Loera can invoke the common law doctrine even though the dismissal of the first indictment—the order that he says precluded revisiting in the second criminal proceeding the admissibility of his post-arrest statements—occurred before jeopardy attached. Jeopardy doesn't attach until the jury is sworn or, in a bench trial, evidence is introduced. But jeopardy is not a condition of collateral estoppel.

Still, there must be a final judgment (in some sense—a critical qualification, as we're about to see); and it can be argued that the dismissal of the first indictment, following the ruling suppressing Loera's statements, wasn't really a final judgment. It was without prejudice, so that the trial following his re-indictment was really just the continuation of the aborted first proceeding. But Judge Friendly had pointed out the paradoxical effects of being picky about the finality of the judgment sought to be used as collateral estoppel. See *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265-66 (2d Cir. 1975). Imagine successive criminal proceedings against the same person involving different crimes but a common issue dependent on the same evidence of guilt. In the first proceeding the judge rules at trial that the evidence should be suppressed, and as a result the defendant is acquitted. Although the trial ruling would not be appealable (nor of course the acquittal), assume that the ruling is rock solid and therefore, though unappealable, entitled to collateral estoppel effect. Now suppose the same scenario but the judge makes the ruling pretrial, and rather than appeal the ruling, as it could, 18 U.S.C. § 3731, the government, doubtful in light of the ruling that it can win a conviction without the evidence that the judge has suppressed, withdraws the charges it had lodged against the defendant and later files a new indictment, hoping for a favorable ruling on the defendant's motion to suppress the evidence in this second round of litigation. The difference in the stage of the proceeding at which the judge ruled shouldn't affect whether the issue can be

revisited in the second proceeding. For these purposes, then, the dismissal of the first indictment should be treated as if it were a final judgment and the evidentiary ruling that the judge made in that first proceeding should be given collateral estoppel effect.

Nevertheless the doctrine of collateral estoppel was not applicable in this case, and so Loera's lawyer can't be faulted for not having invoked it. Not every ruling has collateral estoppel effect in a subsequent proceeding in which the issue resolved by the ruling pops up again. Considering the number of rulings that a judge is apt to make in a case, whether civil or criminal, we worry that to give every ruling collateral estoppel effect would make the doctrine proliferate excessively. As in this case, many trial rulings are made casually, with little attention to the merits of the issue ruled on and in this case probably no attention, since the nonmoving party had not opposed the motion that precipitated the ruling.

The government had not opposed the motion not because it conceded that the agents had elicited statements from the defendant after he asked for a lawyer, but rather, so far as appears, because it wasn't (at the time) interested in using the statements at trial. So naturally the judge granted the motion. That was a judicial action, but it was not the resolution of a dispute (namely over whether Loera had asked for a lawyer before answering the agents' questions). See *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997); *Truck Ins. Exchange v. Ashland Oil, Inc.*, 951 F.2d 787, 792-93 (7th Cir. 1992). And finally the grant of the motion to suppress had played

no role in the dismissal of the first indictment. The only ground for that dismissal had been violation of the Speedy Trial Act, a ground to which the motion was irrelevant.

Let collateral estoppel be applicable to a case such as this and the government will have an enhanced incentive to take an interlocutory appeal from pretrial evidentiary rulings in criminal cases, as it is permitted to do, 18 U.S.C. § 3731, but rarely does. Interlocutory appeals are a burden to appellate courts and delay the finality of litigation; they are not to be encouraged.

For completeness we mention a doctrine related to collateral estoppel though the parties have not mentioned it: the doctrine of law of the case. Even if a ruling is not made after opportunity for a full and fair hearing, it is not to be lightly ignored in a later stage of the same proceeding, *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988); *Tice v. American Airlines*, 373 F.3d 851, 853-54 (7th Cir. 2004)—and "same proceeding" is the practical description of a proceeding and of its resumption following a dismissal without prejudice before the same judge and involving the identical issues and evidence. The reason we gave earlier for treating the interim dismissal as "final" for collateral estoppel purposes—that the stage at which a ruling is made is not decisive on whether to give the ruling collateral estoppel effect—is not applicable to law of the case.

But still the judge has to have addressed an issue for his resolution of it to be treated as the law of the case. *FMS, Inc. v. Volvo Construction Equipment North America, Inc.*, 557 F.3d 758, 762-63 (7th Cir. 2009); *Universal Guarantee*

*Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007); *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 208 (3d Cir. 2010); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478, pp. 649-64 (3d ed. 2005). And, as we have said, the judge in this case in granting the motion to suppress in the first proceeding had not decided whether the statements *should* have been suppressed.

So there was no procedural violation relating to the statements, and we turn to the second issue, concerning the failure of Loera's lawyer to have argued that his client's constitutional right to a speedy trial had been violated, in which event Loera could not have been tried.

Like much of the Bill of Rights, the speedy trial clause is cryptic. All it says is that a criminal defendant has a right to a speedy trial. The critical question is how "speedy." To give some form to the question courts focus on four considerations. They are the length of the delay between indictment and trial, the reason for it, whether the defendant complained about it, and whether he was "prejudiced" by it. *Doggett v. United States*, 505 U.S. 647, 651 (1992); *United States v. Wanigasinghe*, 545 F.3d 595, 597 (7th Cir. 2008). "Prejudice" in turn can be a lesser chance of an acquittal, the indignity and discomfort of being jailed for a long period of time awaiting trial, or the psychological or financial consequences of finding oneself stuck between indictment and trial in a limbo of anxiety and uncertainty. The first of these three prejudice subfactors is the most important, *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *West v. Symdon*, 689

F.3d 749, 752-53 (7th Cir. 2012), because it protects against the conviction of the innocent. The other two factors are really just aspects of the length of delay, and thus underscore the primacy of that, the first, factor in the four-factor test. But realism requires recognition that given the government's heavy burden of proof in criminal cases, delay in bringing a case to trial often works in the defendant's favor: if both prosecution and defense witnesses, or *a fortiori* only prosecution witnesses, suffer from fading memories, delay will reduce the like-lihood of a conviction.

As we noted recently in *Teed v. Thomas & Betts Power Solutions, L.L.C.*, No. 12-2440, 2013 WL 1197861, at *3 (7th Cir. Mar. 26, 2013), "judges tend to be partial to multifactor tests, which they believe discipline judicial decisionmaking, providing objectivity and predictability. But this depends on whether the factors making up the test are clear, whether they are valid, whether each is weighted so that the test can be applied objectively even if the factors don't all line up on one side of the issue in every case . . ., and whether the factors are exhaustive or illustrative—if the latter, the test is open-ended, hence indefinite." A model multifactor test—one not subject to the criticisms suggested in the *Teed* case—is Judge Learned Hand's famous three-factor test (the "Hand Formula") for negligence: $B < PL$. $B$ is the burden of taking a precaution that would have avoided the accident that injured the plaintiff, $P$ is the probability of the accident if the precaution wasn't taken, and $L$ is the expected loss to the victim if an accident occurred

because the precaution had not been taken. *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947).

Alas, the four-factor test (six-factor, if the fourth is replaced by its three subfactors) for a violation of the constitutional right to a speedy trial lacks the crispness of the Hand Formula. But a usable compressed version is "the longer the delay and the more vigorous the defendant's demand to be tried speedily, the more reason the state must show for the delay and the less harm (of whatever type) to himself the defendant need show." *United States ex rel. Mitchell v. Fairman*, 750 F.2d 806, 808 (7th Cir. 1984). The 19-month delay after Loera's first indictment was long, but there is no indication that it impaired his defense at trial—no suggestion that evidence favorable to his defense had become stale. As for psychological or other harm from incarceration, the relevant period is not 19 but 9 months, because Loera was out on bond for 10 of those months; and 9 months is not an unusual period of pretrial detention.

He didn't complain about the delay, moreover, and there is no indication that he was impatient for a trial—not all defendants are, as we noted, and especially when they're not in jail. Seven months of the 19-month delay were attributable to requests for continuances by Loera's lawyer or his co-defendant's lawyer. Loera's lawyer objected to none of the government's requests for continuances (and to none of the co-defendant's requests for continuances either) until he moved to dismiss the indictment. Loera doesn't argue that his lawyer rendered him ineffective assistance in asking for or failing to object to continuances.

With no prejudice from delay within the meaning given "prejudice" by *Doggett* and other cases (no prejudice in part because of the defendant's acquiescence in the delay, see *Doggett v. United States, supra*, 505 U.S. at 658), and no indication of any invidious or otherwise improper ground of or motive for protracted detention, there is no justification for vacating a conviction on constitutional speedy trial grounds, which has the effect of acquittal. The Speedy Trial Act, it is true, imposes much tighter (though still porous) deadlines. But it offsets them by allowing the judge to impose for their violation only the mild sanction of dismissal without prejudice, thus permitting retrial. Given the availability of the Act, there shouldn't be many cases in which federal defendants successfully invoke the speedy trial clause. The constitutional clause plays a greater role in state prosecutions, to which the Act is inapplicable.

Loera has not shown that his lawyer was ineffective. The denial of his section 2255 motion is therefore

AFFIRMED.